FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 3 1 2003

LUTHER D. Thomas, Clerk
By: _____ Deputy Clerk

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAZUO ONOO,                          )
                                     )
               Plaintiff,            )
                                     )     CIVIL ACTION FILE
v.                                   )
                                     )     NO. 1:00-CV-0368-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,  )
TURNER SPORTS, INC. and TURNER       )
BROADCASTING SYSTEM, INC.,           )
                                     )
               Defendants.           )
                                     )

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Kazuo "Sonny" Onoo's Response to Defendants' summary judgment motion fails to raise any disputed issue that would require denial of Defendants' Motion.  Instead, it raises numerous irrelevant issues, mischaracterizes the record and applicable law, and relies on a variety of inadmissible, self-serving, unsupported and conclusory statements in a "kitchen sink" effort to create the appearance of a jury question. Onoo's arguments are baseless -- each of his claims fails as a matter of law.

Onoo's race discrimination claims fail because:  (1) Onoo cannot establish that similarly situated white non-wrestling talent were given the opportunities about which he complains; (2) Onoo cannot establish that he was subjected to a racially

hostile work environment at WCW; and (3) Onoo cannot establish that WCW unlawfully retaliated against him. Onoo's repeated mischaracterization of the facts, self-serving assertions and attempts to "appoint" the decision-makers at WCW as he finds useful to his claims, are unavailing and do not salvage Onoo's discrimination claims. Onoo's Title VII claim also fails because, despite Onoo's after-the-fact efforts to portray himself as an employee, the record establishes that he was an independent contractor for purposes of Title VII.

Onoo's state law claim for intentional infliction of emotional distress fails because Onoo did not even contest Defendants' Motion as to this claim and because this claim is based entirely on the same facts as his discrimination claim, which is insufficient to support an intentional infliction claim under Georgia law. Onoo's state law claim for breach of contract fails because Onoo cannot present any evidence that WCW breached any agreement with him relating to the payment of royalties.

Accordingly, because the undisputed evidence of record demonstrates that Onoo cannot establish all of the essential elements of his claims, Defendants' Motion for Summary Judgment should be granted as to all of Onoo's claims.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  SUMMARY JUDGMENT SHOULD BE GRANTED AS TO ONOO'S § 1981 CLAIMS.

Onoo, either unwilling or unable to articulate a cogent analysis of his claims under **any** legal theory, argues that he is *not restricted* to one method of proving his discrimination claims, then makes scattershot attempts to establish his claims using both the "direct evidence" theory and the McDonnell Douglas proof framework.  Onoo, however, cannot establish race discrimination under the "direct evidence" theory, the McDonnell Douglas proof framework, or any other legal theory.

### A.  **Onoo Cannot Produce Direct Evidence of Discrimination.**

In support of his contention that there is "direct evidence" of discrimination against Onoo by WCW, Onoo principally relies on the declaration of a former WCW employee, Jay Hassman, in which he states numerous opinions and conclusions about another former WCW employee, Vince Russo. (Onoo Brief at 12-14).  Not only are Hassman's statements regarding Mr. Russo inadmissible hearsay and unsupported conclusions, but such statements, even if admissible, are not direct evidence of discrimination.  The record demonstrates that Mr. Russo was not a decision-maker with authority over Onoo or

his contract with WCW.  (Deposition of Vince Russo ("Russo

Dep."), 146; Affidavit of Bill Busch ("Busch Aff."), ¶ 6).

First, Hassman's declaration is inadmissible.  Hassman's

declaration is entirely hearsay because Hassman is commenting on

statements he contends he heard Mr. Russo make.  Such testimony

is insufficient to defeat summary judgment.  See Zaben v. Air

Prods. & Chems., Inc., 285 F.3d 1339, 1343 (11th Cir. 1997)

(comments by non-supervisors repeating management's

discriminatory comments are inadmissible hearsay); see also

Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir.

1996) (inadmissible hearsay cannot be offered to defeat a

summary judgment motion when it is not reducible to admissible

form at trial); Evans v. McClain of Georgia, Inc., 131 F.3d 957,

962 (11th Cir. 1997) (district court correctly dismissed hearsay

evidence because it was "not significantly probative" and was

based on "gossip, common knowledge and hearsay statement of an

unidentified representative").  Further, Hassman's hearsay

declaration is wholly conclusory.  For instance, Hassman

concludes that "[Russo] was obviously stating a bias against

Japanese."  (Onoo Brief at 12).  This purported conclusory

"evidence" is inadmissible.  See Post v. City of Fort

Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("Conclusory

allegations or evidence setting forth legal conclusions are

insufficient to meet the plaintiff's burden" in disputing
summary judgment).[1]

Even if the "evidence" presented by Onoo was admissible, it
is not direct evidence of discrimination.  "Direct evidence is
evidence that establishes the existence of discriminatory intent
behind the employment decision without any inference or
presumption."  Standard v. A.B.E.L. Services, Inc., 161 F.3d
1318, 1330 (11th Cir. 1998).  "[Direct evidence] must speak
directly to the discriminatory intent as well as relate to the
specific action in question."  Hodges v. Stone Savannah River
Pulp and Paper Corp., 892 F. Supp. 1571, 1577 (S.D. Ga. 1995).
(citations omitted).  The standard for direct evidence is
exceptionally high and therefore in most cases "direct evidence
is not present."  Holifield v. Reno, 115 F.3d 1555, 1561 (11th
Cir. 1997).  The alleged statements attributed to Mr. Russo
require the Court to **infer** that because he allegedly made the
statements claimed, he personally discriminated against Onoo or
made the decision to terminate Onoo's agreement with WCW.  In
fact, the record evidence demonstrates that Mr. Russo was not a

---

[1] In support of his direct evidence argument, Onoo also refers to
statements without any citation to the record.  (Onoo Brief at
12-13).  Onoo may not rely on unsupported statements without
support in the record to defeat Defendants' Motion.  See Post, 7
F.3d at 1557.

decision-maker with regard to Onoo and did not have anything to do with the termination of Onoo's agreement. (Russo Dep. at 146; Busch Aff. at ¶ 6). Because Mr. Russo was not a relevant decision-maker, statements allegedly made by him do not constitute direct evidence of discrimination. Standard, 161 F.3d at 1330 ("Remarks by non-decisionmakers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination").

Onoo also claims that statements by mostly unnamed "other decision-makers" constitute direct evidence. (Onoo Brief at 13). However, Onoo only names one of these purported individuals (Terry Taylor) and does not present any evidence that any of these individuals, including Mr. Taylor, were involved in the decision to terminate Onoo's agreement. Because Onoo cannot establish "the requisite nexus between the alleged [racial slurs] and the defendant[s'] decision" to terminate Onoo's agreement, Onoo cannot offer direct evidence of discrimination. See Williams v. Mead Coated Bd., Inc., 836 F. Supp. 1552, 1571 (M.D. Ala. 1993), aff'd 41 F.3d 668 (11th Cir. 1994).

**B.    Onoo Cannot Prove Race Discrimination Under the
       McDonnell Douglas Framework.**

> **1.    Onoo Cannot Establish A Prima Facie Case Of
>         Discrimination.**

Onoo cannot prove race discrimination under the McDonnell
Douglas framework because he cannot establish that he was
replaced by a non-minority, or that WCW treated "similarly
situated" non-minorities more favorably, which are essential
elements of his prima facie case of discrimination.

Because Onoo does not even attempt to argue that he was
replaced by a non-minority, he must identify "similarly
situated" non-minorities that were given the opportunities he
claims he was owed.  See Pashoian v. GTE Directories, 208 F.
Supp. 2d 1293, 1308 (M.D. Fla. 2002).  Onoo points to various
individuals, but none of these individuals are similarly
situated to Onoo.

First, Onoo claims that Jimmy Hart was similarly situated
to him because Mr. Hart "performed as an 'on-air non-wrestling
talent' and performed various administrative and other duties
for WCW."  (Onoo Brief at 16).  Onoo's comparison has no basis
in fact.  Jimmy Hart has been involved as an on-air manager in
professional wrestling since the 1970s and has managed countless
wrestlers, including professional wrestling superstars Hulk
Hogan, King Kong Bundy, and Greg "the Hammer" Valentine.

(Deposition of Jimmy Hart ("Hart Dep."), 10-14, 17, 23-24).  It
is undisputed that Hart has over twenty years of on-air
performing experience in professional wrestling and has worked
in many top wrestling organizations, including the World
Wrestling Federation.  (Id. at 10-14, 21).  Onoo, on the other
hand, was first exposed to professional wrestling in 1994 and
did not perform as an on-air manager and talent until 1996.
(Onoo Dep. at 21-22, 29).  Onoo performed as a manager of only a
handful of wresters before his agreement was terminated in 1999.
(Id. at 30-33).  Although WCW gave Onoo many opportunities in
the three years he served as an on-air performer at WCW, he in
no way had the experience, notoriety, or talent of Mr. Hart.
Onoo even admits that Mr. Hart is much more experienced than
Onoo, and that Mr. Hart enjoys enormous notoriety among
wrestling fans.  (Onoo Dep. at 127-128).

Also, there is no evidence that Onoo and Mr. Hart are
similarly situated with regard to Onoo and Mr. Hart's
"administrative and other duties."  Onoo's non-managing duties
consisted of providing translation services and assisting with
Japanese talent.  (Onoo Dep. at 21-22; Onoo Brief at 16).  Mr.
Hart was, however, involved in developing story lines, providing
creative advice, writing WCW's music, developing promotions and
merchandise, and performing various other functions on behalf of

WCW. (Hart Dep. at 40-44). In light of the obvious differences between Onoo and Hart with respect to talent, experience, notoriety, and duties performed, it is disingenuous for Onoo to claim that he was similarly situated to Mr. Hart.

In a further attempt to manufacture evidence to support his claim, Onoo lists a number of WCW executives and on-air talent at WCW and summarily claims that he was similarly situated to them. (Onoo Brief at 16-17). This effort fails. For instance, Onoo claims that Eric Bischoff was similarly situated to him. (Id. at 16-17). Eric Bischoff was the **President** of WCW and hired Onoo. (Onoo Dep. at 20-23, 55, Deposition of Eric Bischoff ("Bischoff Dep."), at 45). As to the remaining individuals Onoo names, only one of them (Mike Sanders) actually performed as an on-air manager, and Onoo admits that Sanders also **wrestled** for WCW. The undisputed record therefore demonstrates that the individuals Onoo names were not even remotely similarly situated to him.

Onoo's contention in his Response that he was an "agent" at WCW and that he was similarly situated to other "agents" at WCW (Onoo Brief at 17), also is baseless. All of the agreements Onoo had with WCW stated that his duties were that of international consultant and on-air talent. (Onoo Dep. at Exhs. 1, 2, 4, 6, and 7). There is no evidence that Onoo ever sought

1104051_5.DOC                                                          -9-

a position as an agent or that WCW requested him to act as an agent. Onoo's reference to Mr. Bischoff's testimony that Onoo worked as an "agent" for WCW is misleading. (Onoo Brief at 17). Mr. Bischoff testified that Onoo sometimes "functioned" as an agent regarding his handling of WCW's relationship with Japanese wrestling companies. (Bischoff Dep. at 30). The fact that Onoo may have performed some functions as an agent in connection with WCW dealings with Japanese wrestling companies does not prove that he was similarly situated with individuals that WCW hired to be "agents" at WCW televised and live events.

Because Onoo concedes that he was not replaced at WCW, and because he cannot provide any evidence that similarly situated individuals were given opportunities that he contends he was entitled to receive, Onoo's discrimination claim fails.

### 2. Onoo Cannot Establish That WCW's Proffered Legitimate Nondiscriminatory Reasons For Its Actions Were Pretextual.

Defendants are also entitled to summary judgment because Defendants have articulated legitimate, nondiscriminatory reasons for WCW's actions with respect to Onoo. In response, Onoo dumps into the record a laundry list of irrelevant, conclusory and self-serving statements, mischaracterizes the evidence of record, and misstates controlling law to try to

demonstrate that WCW's proffered reasons were pretextual. Onoo's efforts are unavailing.

Onoo argues that WCW's reference to its business downturn with respect to Onoo establishes pretext because, according to Onoo, Defendants' failed to identify what constitutes "essential" talent. (Onoo Brief at 19, 22). This argument is baseless. Contrary to Onoo's assertions, WCW has clearly defined "essential talent." Mr. Busch stated in his Affidavit that "essential talent" was (1) talent that WCW was required to retain under the terms of existing contracts, (2) talent necessary to staff events, and (3) talent that WCW believed to be a major contributing factor to maintaining or growing ratings. (Busch Aff. ¶ 5).

In a blatant mischaracterization of WCW's position, Onoo claims that Defendants cited a need to "cut its payroll" as a reason for terminating Onoo's agreement, and that because some white wrestlers were given contracts after his contract was terminated, Defendants' reasons are pretext. (Onoo Brief at 23). Contrary to Onoo's assertion, WCW did not terminate Onoo's contract to "cut costs." (Busch Aff. ¶¶ 5-6). As explained in Defendants' Initial Brief, in late 1998 and into 1999, WCW was **restructuring its entire business operations,** which included reevaluating the use of limited resources and hiring and

terminating contracts of wrestlers and non-wrestling on-air talent.  (Affidavit of Diana Myers ("Myers Aff.") ¶¶ 6-7).  WCW terminated the contracts of talent that it deemed non-essential, such as Onoo, in order to be able to bring in essential wrestling talent that could help generate ratings and revenue. (Id. at ¶ 5).  Any decision by WCW to give contracts to wrestlers after Onoo's contract to perform as a non-wrestling manager was terminated is completely consistent with WCW's decision to restructure its operations.

Onoo desperately attempts to demonstrate pretext by claiming that WCW has not identified the decision-maker responsible for terminating Onoo's contract and has not consistently identified the reasons for that termination.  (Onoo Brief at 24-27).  This is entirely inconsistent with the evidence in the record.  WCW has clearly identified Bill Busch as the decision-maker regarding the termination of Onoo's contract.  (Busch Aff. at ¶ 6; Defendants' Initial Brief at 8-9).  Although Onoo attempts to distort the record through hearsay and conclusory statements and mischaracterizations of evidence, he has presented no evidence that Mr. Busch did not make the decision to terminate Onoo's agreement.  Further, WCW has consistently stated that, at the time Mr. Busch decided to terminate Onoo's agreement, WCW was responding to a business

downturn by restructuring its operations, and that as part of this restructuring, WCW concluded that Onoo was not, and did not have the potential to be, a major contributing factor to maintaining or growing WCW's ratings. (Defendants' Memorandum at 14; Busch Aff. at ¶ 6).

In a further misstatement of the facts, Onoo boldly states, without evidentiary support, that "Russo was clearly the decision-maker." (Onoo Brief at 24). However, the only "evidence" Onoo provides that Mr. Russo had any decision-making authority is former employee Jay Hassman's conclusory, unsupported, hearsay declaration that stated "[f]rom my point of view Vince Russo was the person calling the shots." (Declaration of Jay Hassman at ¶ 12). Even if Mr. Hassman's Declaration was admissible evidence, it does not support Onoo's discrimination claims on summary judgment because Onoo has failed to provide any evidence that Mr. Russo was a decision-maker specifically with respect to the termination of Onoo's contract with WCW. See Mitchell v. USBI Co., 186 F.3d 1352, 1355 (11th Cir. 1999) (actions by non-decision makers do not raise inference of pretext); see also Miller v. Bed, Bath & Beyond, Inc., 185 F. Supp.2d 1253, 1272 (N.D. Ala. 2002) (comments by employees that were not decision-makers as to

plaintiff's employment "generally do not raise an inference of discrimination or pretext on the part of the employer").

In another misguided attempt to establish pretext, Onoo claims that he was a "major contributor" to WCW. (Onoo Brief at 27-30). Onoo offers no objective evidence to support his conclusory statement, and none exists. Onoo's opinions regarding his "contribution" to WCW and reference to an irrelevant "familiarity rating" do not contradict the fact that at the time WCW terminated Onoo's agreement, WCW was restructuring its operations and believed that Onoo's role as a non-wrestling manager did not have the potential to contribute to ratings.

In any event, the fact that Onoo disagrees with WCW's decision or believes that it is a bad decision does not prove that WCW's asserted reasons for its decision are pretext. As this Court has found, "[t]he Eleventh Circuit has made clear, an 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" Fletcher v. ADT Security Services, Inc., 2000 WL 33231616 (N.D. Ga. 2000) (quoting Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1187 (11th Cir. 1987). "Federal courts do not sit as a super-personnel department that reexamines an entity's business

decisions.  No matter how medieval a firm's practices, no matter
how highhanded its decisional process, no matter how mistaken
the firm's managers, the [law] does not interfere."  Fletcher,
2000 WL 33231616 at *8 (quoting Elrod v. Sears, Roebuck & Co.,
939 F.3d 1359, 1365 (11th Cir. 1991)).  Regardless of Onoo's
opinion as to his own potential, because Onoo cannot demonstrate
that Mr. Busch and WCW's reasons for terminating Onoo's
agreement are pretext, his claim fails.  Fletcher, 2000 WL
33231616 at *8; see Standard, 161 F.3d at 1333 ("The heart of
pretext inquiry is not whether the employee (or independent
contractor) agrees with the reasons that the employer gives for
the discharge, but whether the employer really was motivated by
those reasons.").  Accordingly, because Onoo has presented no
evidence of a discriminatory motive by WCW, Onoo's contention
that he was a "major contributor" to WCW does not prove pretext.

     Onoo also asserts in support of his pretext argument that
"Asian wrestlers were adversely treated under Russo."  (Onoo
Brief at 30).  Onoo contends that because of Mr. Russo, Asian
wrestlers were no longer used.  (Id. at 30-33).  This argument
is flatly contradicted by Onoo's admission that WCW used Asian
wrestlers **after** Mr. Russo came to WCW.  (Id. at 30-31).  In
fact, Onoo claims that WCW purportedly used Asian wrestlers over
Mr. Russo's objections, which demonstrates that Russo was not a

decision-maker with respect to opportunities provided to Onoo or any other Asian talent. (Id. at 31).

Onoo also asserts that alleged racial comments by two other WCW employees, Diana Myers and Terry Taylor, demonstrate pretext. Despite Onoo's unsupported conclusory statements to the contrary, Onoo offers no evidence that Ms. Myers and Mr. Taylor were decision-makers with regard to Onoo. Accordingly, as stated above, even if they did make the comments alleged, it does not support pretext. See Mitchell v. USBI Co., 186 F.3d 1352, 1355 (11th Cir. 1999); see also Miller v. Bed, Bath & Beyond, Inc., 185 F. Supp.2d 1253, 1272 (N.D. Ala. 2002).

## C.  Onoo Cannot Establish That WCW Subjected Him To A Racially Hostile Work Environment.

In support of his hostile work environment claim, Onoo alleges that non-decision-makers at WCW made derogatory comments regarding Asians. (Onoo Brief at 35).[2] Onoo does not provide the time, place or context of these alleged comments nor does he demonstrate how such comments created a hostile work environment or how they affected his work performance.

To survive summary judgment on this claim, Onoo must show that the alleged comments "altered the condition of the

---

[2] Onoo states that Mr. Russo and Mr. Taylor were "his supervisors." Onoo provides no evidence to support this assertion and it is contrary to the evidence in the record.

workplace, creating an objectively abusive and hostile work environment" and the workplace must be permeated with "intimidation, ridicule and insult" that is "sufficiently severe or pervasive" to create an "abusive working environment." Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995) (citations omitted). Onoo does not even attempt to show how the few alleged comments he claims were made in his presence over a four-year period satisfy this standard. Such sporadic and isolated comments cannot substantiate a hostile work environment claim. Hudson v. Norfolk Southern Railway Co., 209 F. Supp.2d 1301, 1324 (N.D. Ga. 2001) (citing Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 2001)); Smith v. Beverly Health and Rehabilitation Services, Inc., 978 F. Supp. 1116, 1120 (N.D. Ga. 1997).

Moreover, Onoo admits that he "was not privy" to the all of the comments he alleges were made. (Onoo Brief at 35). As this court has previously held, "[a]n employee can hardly contend that his environment was racially hostile if he did not experience the alleged hostility." Dixon v. Young, 2000 WL 33224515 (N.D. Ga. 2000). Even if individuals at WCW "frequently used racial slurs, the relevant inquiry is the extent to which [Onoo] was aware of any racial hostility." Id.

Accordingly, comments that Onoo did not hear cannot be used to support Onoo's hostile work environment claim.

Further, to establish a hostile work environment, Onoo must demonstrate that the alleged discriminatory activity was subjectively hostile as well as objectively hostile. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). Onoo does not dispute that he often referred to himself and other Asians at WCW as a "Jap" or "Japs." (See Defendants' Memorandum at 20-21). Onoo's repeated reference to himself and others as "Japs" demonstrates that he was not offended by the use of the word, and it is disingenuous for him now to claim that such use constituted a racially hostile work environment.

Onoo also tries to support his hostile work environment claim with allegations that another "WCW actor" portrayed martial arts moves incorrectly, and that he found a mock Chinese menu in a WCW break room. As for the martial arts moves, Onoo does not demonstrate how that alleged portrayal was derogatory or offensive. With regard to the Chinese menu, Onoo admits that he laughed at it (Onoo Brief at 35-36), and does not deny that he was showing it to people at WCW as a joke. (Defendants' Memorandum at 22). These alleged incidents do not establish a racially hostile work environment.

Onoo's hostile work environment claim also fails because Onoo has not established that the alleged discriminatory conduct unreasonably interfered with his work performance.  Quite the contrary, Onoo maintains that he was successful and "was a major contributing factor" to WCW's ratings and revenue.  (Onoo Brief at 28).  Onoo offers no evidence that any alleged racially hostile conduct affected his performance at WCW.  Accordingly, Onoo's hostile work environment claim fails.  See Mitchell v. Carrier Corp., 954 F. Supp. 1568, 1577 (M.D. Ga. 1995), aff'd, 108 F.3d 343 (11th 1997); Evans v. Pemco Aeroplex, 1998 WL 1048470 (N.D. Ala. Feb. 23, 1998).

**D.    Onoo Cannot Establish A Claim For Retaliation.**

Onoo's claim of retaliation is without merit.  The record is devoid of any evidence that WCW took any adverse action against him for his alleged complaints of discrimination, and Onoo does not even dispute that WCW gave him additional opportunities to perform after his purported complaints.

To succeed on a claim of retaliation, Onoo must demonstrate that there is "a casual link between the protected expression and the adverse action."  Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1197 (11th Cir. 1997).  This requires Onoo to present evidence that the decision-makers had knowledge of the alleged complaints.  See Holston v. The Sports Authority, Inc.,

136 F. Supp.2d 1319, 1337 (N.D. Ga. 2000). Onoo has failed to meet his burden. Onoo has presented no evidence or even alleged that the two individuals he allegedly complained to made decisions about him and his contract with WCW. Onoo also has not presented any evidence that Mr. Busch or any other decision-makers at WCW had any knowledge of these alleged complaints. In fact, Onoo does not even allege that the two individuals he allegedly complained to told any decision-makers at WCW about the alleged complaints.

Further, Onoo must demonstrate that WCW's action was "'discriminatorily' motivated." Lockaby v. United Testing Group, Inc., 986 F. Supp. 1400, 1403 (N.D. Ga. 1997) (citations omitted). Because Onoo's contract was terminated for legitimate, non-discriminatory business reasons, Onoo cannot satisfy this element either. Onoo has offered no evidence of any casual link between his alleged complaints and the decision to terminate his agreement with WCW. Accordingly, Onoo's retaliation claim must be dismissed.

## II. TITLE VII DOES NOT APPLY TO ONOO'S DISCRIMINATION CLAIMS.

To fall within the statutory jurisdiction of Title VII, an employment relationship must exist between the plaintiff and the defendants. Holloman v. Northeast Georgia Area Development Comm'n, 740 F. Supp 1571, 1575 (M.D. Ga. 1990). Despite the

fact that Onoo acknowledged that he was an independent contractor (Onoo Dep. at 24, 256) and despite the fact that Onoo entered into each agreement with WCW as an independent contractor (Id. at Exhs. 1, 2, 4, 6 and 7), Onoo now contends that he was an employee. (Onoo Brief at 40). Onoo's belated efforts do not salvage his claim.

The factors that are considered in determining whether an individual is an employee or an independent contractor are the hiring party's right to control, the level of skill required, the source of equipment and tools, the duration of the relationship, the method of payment, the provision of employee benefits, the tax status of the parties and the intent of the parties. Nationwide Mutual Ins. Co. v, Darden, 503 U.S. 318 U.S. 730, 751-52 (1989). Onoo does not dispute that he provided his services to WCW through his company, that he received all income from WCW through his company, and that he received income independent of WCW through the ownership and operation of a karate school and fitness club, and from rental property. (Initial Brief at 28). In addition, Onoo does not dispute that he did not receive employee benefits and that WCW did not withhold taxes. (Id.) With regard to the issue of control, Onoo does not dispute that he chose his character, outfits and props, and had to purchase the outfits himself. (Id.) These

factors, combined with undisputed evidence that in signing his agreements with WCW, Onoo and WCW expressly intended to enter into an independent contractor relationship, all establish that Onoo was indeed an independent contractor and not an employee. Accordingly, Onoo's Title VII claim fails.[3]

### III. **ONOO CANNOT ESTABLISH AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

Defendants' Motion for Summary Judgment on this claim should be granted because **Onoo does not contest this claim in his Response to Defendants' Motion**. Not only does Onoo concede this claim, but this claim also lacks merit because it relies on nothing more than Onoo's allegations of discrimination. Because Onoo is required under Georgia law to establish more than just alleged discriminatory conduct to sustain an intentional infliction of emotional distress claim, summary judgment should be granted on this claim. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992); Ward v. Papa's Pizza To Go, Inc., 907 F. Supp. 1535, 1542 (S.D. Ga. 1995); Borden v. Johnson, 196 Ga. App. 288, 395 S.E.2d 628 (1990).

---

[3] Even assuming arguendo, that the requisite employer-employee relationship did exist between Onoo and WCW, Onoo's Title VII claim still fails for all of the same reasons that Onoo's § 1981 claims fail. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

**IV.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO ONOO'S BREACH OF CONTRACT CLAIM.**

Onoo has provided no evidence to support any of his breach of contract claims.  With regard to the "Toshiba Deal," it is undisputed that Onoo received his share of the upfront money Toshiba paid to WCW.  (Onoo Dep. at 210-211).  Onoo now contends that he is entitled to a share of the profits from the sale of the NWO CD related to the Toshiba Deal.  (Onoo's Brief at 46-48).  However, Onoo has offered no evidence that the NWO CD ever made any profit.  In fact, Onoo admits that the only individual at WCW that he asked about profits from the NWO CD was Diana Myers, and that she told him that she was not aware of any profits from that deal.  (Onoo Dep. at 214).  Onoo never made any attempts to investigate or prove whether such profits existed.  (Id. at 215).  Further, Onoo brought the Toshiba Deal to WCW and it was his connections at Toshiba that were the purported basis for the deal.  (Id. at 210, 215).  Despite the fact that he brokered the deal, Onoo has admitted that he never asked anyone at Toshiba about any information on profits made from the sale of the NWO CD.  (Id. at 215).  Accordingly, there is no evidence that the NWO CD made any profits and Onoo has not satisfied his burden of proving the existence of any such

profits or that WCW breached any contractual obligation relating thereto.   Therefore, this claim fails.

As for the "Tommy Boy Deal," Onoo presents no evidence to support the existence of any agreement between Onoo and WCW relating to the Tommy Boy Deal.   Onoo had no involvement in that deal and the WCW Mayhem CD that resulted from that deal does not contain any songs in which Onoo has an interest.   (Myers Aff. ¶ 12).   Onoo simply relies on his own self-serving statement that the songs from that CD are "attributed" to him.   (Onoo Brief at 49).   The record evidence shows that Onoo had no involvement in the Mayhem CD and was entitled to no royalties from this deal.   (Id.)   Because Onoo provides no evidence to support his breach of contract claim, it must be dismissed.

## CONCLUSION

For all of the foregoing reasons as well as the reasons explained in more detail in Defendants' Initial Brief, Defendants' Motion for Summary Judgment on all of Onoo's claims asserted in this action should be granted, and all of Onoo's claims should be dismissed.

This 31st day of January, 2003.

TROUTMAN SANDERS LLP

_____
JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)

Attorneys for Defendants

## CERTIFICATION

Pursuant to Local Rule 7.1(D), I certify that this Reply Memorandum has been prepared with one of the fonts and point selections ("Courier New 12") approved by the Court in Local Rule 5.1(B).

This 31st day of January, 2003.

ERIC A. RICHARDSON
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAZUO ONOO,                          )
                                     )
                  Plaintiff,         )
                                     )        CIVIL ACTION FILE
v.                                   )
                                     )        NO. 1:00-CV-0368-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,  )
TURNER SPORTS, INC. and TURNER       )
BROADCASTING SYSTEM, INC.,           )
                                     )
                  Defendants.        )
                                     )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of

this ***DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR***

***SUMMARY JUDGMENT*** upon the interested parties by hand delivery

to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3525 Piedmont Road
Atlanta, GA  30305

1104051_5.DOC

This 31st day of January, 2003.

ERIC A. RICHARDSON
Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404)885-3000 (voice)
(404) 885-3995 (facsimile)

1104051_5.DOC